## St. Louis, Iron Mountain and Southern Railroad Co. v. McWhirter, Admx.

(Decided November 17, 1911.)

### Appeal from Hickman Circuit Court.

1. Railroads—Interstate Commerce—Violation of Sixteen Hour Statute—Negligence Per se.—The act of appellant in requiring its servants in charge of a freight train engaged in Interstate Commerce, to remain on duty for a longer time than sixteen consecutive hours, in violation of chapter 2939, section 2, United States Compiled Statutes, was properly held by the circuit court to be negligence per se; and such negligence concurring with that of the engineer on the train in causing the death of appellee's intestate, who was a brakeman on the train, she as administratrix of his estate had cause of action for his death.

2. Contributory Negligence—Assumed Risk.—Neither the doctrine of contributory negligence, nor that of assumption of risk, is available as a defense in an action brought under this statute.

3. Validity of Statute.—There was no merit in appellant's contention that the statute is unconstitutional, as its constitutionality has been sustained by the Supreme Court. (B. & O. R. R. Co. vs. Interstate Commerce Com., U. S. Supreme Court, July, 1911, Advance Sheets, 621.)

4. Instructions—Measure of Damages—Failure to Give Instruction on Not Reversible Error.—The instructions correctly advised the jury of the law of the case, and the failure of the trial court to give an instruction as to the measure of damages, though error, does not authorize a reversal, as appellant did not ask such an instruction; moreover, it is apparent from the smallness of the verdict ($3,000.00) that appellant was not prejudiced by the failure of the court to give it.

E. T. BULLOCK, R. T. RAILEY for appellant.

EATON & BOYD for appellee.

Opinion of the Court by Judge Settle—Affirming.

This action was brought in the Hickman Circuit Court by appellee as administratrix of the estate of her deceased husband, Etwal McWhirter, to recover of appellant, its conductor and engineer, damages for his death, which occurred at Wolf Lake, Illinois, at which place one of appellant's trains ran over his body; he being at the time in appellant's employ as a flagman on the train.

It was, in substance, alleged in the petition, as amended, that in his capacity as flagman and by direction of his superiors, appellee's intestate left Illmo, Missouri, on the train in question at 3:30 o'clock, p. m., February 22nd, 1910, for a run to Bush, Illinois, and was killed at Wolf Lake, Illinois, on the return trip at 7:37 o'clock, a. m., February 23rd, 1910, by the negligence of appellant, its agents and servants in compelling him to remain continuously on duty as flagman on the train for more than sixteen consecutive hours, and also by the negligence of the conductor and engineer of the train in operating it.

It was further alleged in the petition, as amended, that the train by which the appellee's intestate was killed, was at the time of his death engaged in Interstate Commerce, that is in the business of transporting freight between Missouri and Illinois; that in requiring the intestate to serve as a flagman on its train for a longer period than sixteen consecutive hours, appellant violated the provisions of section 2, chapter 2939, United States Compiled Statutes, being part of an act of Congress entitled "An Act to Promote the Safety of Employes and Travelers Upon Railroads by Limiting the Hours of Service of Employes Thereon," which became a law, March 4th, 1907; and also the provisions of another act of Congress entitled "An Act Relating to the Liability of Common Carriers by Railroads to Their Employes in Certain Cases," which became a law April 22nd, 1908.

Appellant's answer, except with respect to appellee's appointment and qualification as administratrix and right to sue as such, traversed the averments of the petition as amended, and in addition, alleged that in entering its service as a flagman appellee's intestate by contract assumed the ordinary risks incident to that service; that his death was an unavoidable accident and

resulted from an ordinary risk such as he contracted to assume, for which reason the law imposed upon appellant no liability for his death.   These averments were controverted by reply, and on the trial the jury returned a verdict awarding appellee $3,000 damages.   Appellant complains of the judgment entered upon the verdict and the refusal of the circuit court to grant it a new trial, hence this appeal.

Section 2, chapter 2939, United States Compiled Statutes, upon which appellee's action was based, reads as follows: ·

"Section 2. That it shall be unlawful for any common carrier, its officers or agents, subject to this act to require or permit any employe subject to this act to be or remain on duty for a longer period than sixteen consecutive hours, and whenever such employes of such common carrier shall have been continuously on duty for sixteen hours he shall be relieved and not required or permitted to again go on duty until he has had at least ten consecutive hours off duty; and no such employe who has been on duty sixteen hours in the aggregate in any twenty-four hour period shall be required or permitted to continue or again go on duty without having had at least eight consecutive hours off duty: Provided, that no operator, train dispatcher, or other employe who by the use of the telegraph or telephone dispatches, reports, transmits, receives or delivers orders pertaining to or affecting train movements shall be required or permitted to be or remain on duty for a longer period than nine hours in any twenty-four hour period in all towers, offices, places, and stations continuously operated night and day, for a longer period than thirteen hours in all towers, offices, places and stations operated only during the day time, except in cases of emergency, when the employes named in this proviso may be permitted to be and remain on duty for four additional hours in a twenty-four hour period on not exceeding three days in any week: Provided further, The Interstate Commerce Commission may, after full hearing in any particular case, and for good cause shown, extend the period within which a common carrier shall comply with the provisions of this proviso as to such case."

The evidence shows beyond doubt that the train on which the intestate was a flagman left Illmo, Missouri, at 3:30 p. m. February 22nd, 1910, for its regular run to Bush, Illinois, and return; and that in returning from

the latter place to Illmo on the following day, February 23rd, 1910, the train ran over and killed the intestate at Wolf Lake, Illinois, a town and station situated on appellant's railroad. There is some doubt under the evidence whether the intestate's death occurred at 7:35 or 7:37 a. m., February 23rd, 1910, but none whatever that it was as late as 7:35. Guess, appellant's engineer, at the time in charge of the train, testified at the coroner's inquest, immediately following the accident, that the intestate's death occurred at 7:37 a. m., February 23rd, but later testified, in giving his deposition for use on the trial in the court below, that it occurred at 7:35 a. m., February 23rd.

Geo. C. Loper, a witness introduced on the trial by appellant, testified that the intestate was killed at 7:37, a. m., February 23rd, 1910, and no attempt was made by appellant to prove that he was killed earlier than 7:35 a. m. of that day, or that the intestate had not, when killed, been in service as flagman on the train for as much as sixteen hours and five minutes consecutively.

It is immaterial, therefore, whether his death occurred at 7:35 or 7:37 a. m., February 23rd, 1910, as it is patent from the evidence that it occurred after more than sixteen consecutive hours of continuous service by him as a flagman on the one train operating between Illmo, Missouri, and Bush, Illinois.

In thus requiring of the intestate more than sixteen consecutive hours of service, albeit the excess of service over the sixteen hours was but five or seven minutes, appellant violated the statute, supra; and as the death of the intestate from the act of its engineer complained of, occurred while he was engaged in the required continuous service and after the expiration of the sixteen consecutive hours allowed by the statute, there seems to be no escape from the conclusion that the act of appellant in thus extending his service beyond the statutory limit was negligence per se, to which the intestate's death, must as a matter of law, be attributed, and if so the right of appellee to maintain this action cannot be questioned.

We also find from the averments of the petition as amended that appellee asserts the right to recover of appellant the damages claimed on the ground that the death of her intestate was also attributable to the negligence of the conductor, and engineer in charge of the train. The record fails to show any negligence on the

part of the conductor, other than his act in continuing the train crew on duty longer than sixteen consecutive hours, but there was some evidence tending to show negligence on the part of the engineer, from which the jury had the right to determine whether it was a concurring cause of the intestate's death.

It appears from the testimony of the engineer himself that the intestate's death occurred under the following circumstances: When the train reached Wolf Lake, the intestate, whose place as flagman was at the front end of the train, was notified by the engineer that it would stop over at that place on account of the sixteen hour law. The intestate was then in the cab of the engine and he at once stepped out of the engine and along the foot board from which he got to the ground ahead of the engine, for the purpose of throwing a switch that the train might be side-tracked. Although in view of the engineer all the time, the latter admitted he did not look to see where he was, or what he did. Very soon after the intestate left the engine the engineer observed the Wolf Lake telegraph operator excitedly signaling him to stop the train, which was then moving at the rate of three or four miles an hour. The engineer immediately stopped the train and upon stepping off the engine was told by the operator he had run over the intestate, whose body he found under the tank wheel cut in two.

In reply to the direct question "How was he killed?" the engineer said, "Performing his duty, going out to set a switch."

According to the testimony of the operator, Loper, who seemed to be the only eye witness to the accident, the intestate left the engine as described by the engineer and ran toward the switch but fell between the rails before reaching it. He then got upon his hands and knees, but before getting to his feet, was run over by the engine. When he fell the operator began signaling the engineer to stop the train, but the latter failed to observe the signals in time to stop the engine before it ran over the intestate.

There was no proof that the manner in which the intestate approached the switch was not the usual and an ordinarily safe way of doing so and of setting the switch; and as he was in plain view of the engineer from the time he left the engine, or would have been if the engineer had maintained a lookout in that direction, the latter, knowing he was going in front of the engine

should have kept such lookout for his movements; had he done so there was nothing to prevent his seeing his fall, and with the train going at only three or four miles an hour, the reversal of the engine and application of the air brakes might, and in all probability would, have stopped the train in time to enable the intestate to regain his feet and make his escape.

If appellee's right of recovery had depended alone upon her ability to show that her intestate's death was caused by the negligence of the engineer, there was, as we have seen, evidence conducing to prove such negligence.

It is, however, proper to say that the negligence of appellant's engineer in the particular mentioned, and that of its conductor, or some other servant in control of its transportation department, in keeping appellee's intestate on duty as a brakeman for a longer period than sixteen consecutive hours, concurred in causing his death, and all being servants of appellant their negligence is chargeable to it. Therefore, the question of proximate cause raised by counsel for appellant can have no part in our consideration of the case.

Recurring to the appellant's violation of the provisions of the statute prohibiting it from requiring its employes to remain on duty longer than sixteen consecutive hours, we find that the language of the provision in question is mandatory and that the duty it imposes is a definite, absolute duty. Its non-performance may not, therefore, be excused by a showing on the part of the railroad company that it used ordinary care, or reasonable diligence to perform it, but was unable to do so. The violation of such a statutory duty is, therefore, negligence per se. Our meaning cannot be better expressed than in the language of the following excerpt from the opinion of the Georgia Supreme Court in the case of Platt v. Southern Photo Material Co., 60 S. E., 1066:

"Every violation of any of those duties of omission or commission, which arising from man's estate as a social being, has received recognition by the law of the land, either generally or specifically, is an act of negligence. So long as these duties remained undefined, or defined only in abstract, general terms, a breach is not properly denominated negligence per se: but when any specific act or dereliction is so universally wrongful as to attract the attention of the law-making power, and this concrete wrong is expressly prohibited by law or

ordinance, a violation of this law, a commission of the specific fact forbidden is for civil purposes correctly called negligence per se. In those jurisdictions in which the application of the facts to the law rest with the jury, the court cannot primarily declare that any particular concrete act, or state of circumstances amount to a breach of duty unless the law so expressly declares. This finding is left to the jury; but if the law itself puts its finger on a particular thing and says: 'This is wrong,' the court may also (for there is no question to a fact which the law says exists), put its finger on that same thing and say, 'this is negligence—negligence per se.' This artificial distinction between negligence per se and negligence not per se, respects, therefore, merely the method by which the existence of negligence is to be ascertained in particular instances. When once its existence is determined, whether through the court's judicial cognizance, or the jury's findings, as a matter of fact, there is no further distinction made, and the one form of negligence has in the further consideration of the case just the same effect as the other—no more, nor less.''

We have repeatedly recognized the rule here announced. Thus in National Casket Co. v. Power, 137 Ky., 156, which was an action to recover damages against the owner of an automobile by one whose horse was frightened and himself injured, by the alleged negligence of the person in charge of the machine, in failing to slacken its speed and give the signals of its approach as required by section 2939g, Kentucky Statutes, we, in commenting on the effect of a failure to obey the statutory standards of care, in the opinion said:

''The evidence for the plaintiff was that Moore did not sound any warning whatever; that he was driving the machine at a very high rate of speed, and that he did nothing toward respecting the safety of the ladies except swerve to the right so as to well miss their vehicle. These facts presented prima facie a case of negligence. The failure to sound the horn, or other similar contrivance to signal the approach of the car, was a violation of the statute, was per se negligence, and if the injury to the plaintiffs was occasioned thereby, being a proximate result of such failure, appellants are liable to respond in damages.'' Nashville, Chattanooga & St. Louis R. R. Co. v. Higgins, 29 R., 89; 92 S. W., 549; Cumberland Tel. Co. v. Yeiser, 141 Ky., 15.

In addition to the above authorities in this jurisdiction we cite the following cases of like import, decided by the courts of last resort of other States: Vandeveer v. Moran (Neb.), 112 N. W. 581; L. & N. R. R. Co. v. Haynes (Ind.), 91 N. E. 962.

Our attention has not been called to any case in which the precise question upon which it is here sought to hold appellant responsible for the death of appellee's intestate has been passed on, but we find that the constitutionality of the act of March 4th, 1907 (Chap. 2939, U. S. Comp. Stats.) was sustained by the Supreme Court in Balto. & Ohio R. R. Co. v. Interstate Commerce Commission, U. S. Supreme Court, July, 1911, Advance Sheets, 621. The case arose on a bill in equity to annul an order made by the Interstate Commerce Commission, which required the carriers within the provisions of the act in question to make monthly reports, under oath, showing the instances where employes subject to the act had been on duty for a longer period than sixteen consecutive hours. In the opinion it is said:

"Although the question was not specifically raised by the bill it is now contended that the statute is unconstitutional in its entirety, and, therefore, no action of the Commission can be based upon it. It is said that it goes beyond the power which Congress may exercise in the regulation of Interstate Commerce; that while addressed to common carriers engaged in Interstate Transportation by railroad to any extent whatever, its prohibitions and penalties are not limited to Interstate Commerce, but apply to intrastate railroads and to employes engaged in business. The prohibitions of the act are found in section 2. This provides that it shall be 'unlawful for any common carrier, its officers or agents, subject to this act, to require or permit any employe, subject to this act to be or remain on duty' for a longer period than that prescribed. * * * But the argument undoubtedly involves the consideration that the interstate and intrastate operations of Interstate carriers are so interwoven that it is utterly impracticable for them to divide their employes in such manner that the duties of those who are engaged in connection with Interstate Commerce shall be confined to that commerce exclusively. And thus, many employes who have to do with the movement of trains in Interstate transportation are, by virtue of practical necessity, also employed in intrastate transportation. This consideration, how-

ever, lends no support to the contention that the statute is invalid. For there cannot be denied to Congress the effective exercise of its constitutional authority. By virtue of its power to regulate interstate and foreign commerce, Congress may enact laws for the safeguarding of the persons and property that are transported in that commerce, and of those who are employed in transporting them. * * * The fundamental question here is whether a restriction under the hours of labor of employes who are connected with the movement of trains in interstate transportation is comprehended within this sphere of authorized legislation. This question admits of but one answer. The length of hours of service has direct relation to the efficiency of the human agencies upon which protection to life and property necessarily depends. This has been repeatedly emphasized in official reports of the Interstate Commerce Commission, and is a matter so plain as to require no elaboration. In its power suitably to provide for the safety of its employes and travelers, Congress was not limited to the enactment of laws relating to mechanical appliances, but it was also competent to consider and to endeavor to reduce, the dangers incident to the strain of excessive hours of duty on the part of engineers, conductors, train dispatchers, telegraphers, and other persons placed within the class defined by the act. And in imposing restrictions having reasonable relation to this end there is no interference with liberty of contract as guaranteed by the Constitution. Chicago, B. & Q. R. R. Co. v. McGuire, 219 U. S., 549, ante 259, 31 Sup. Ct. Rep., 259. If, then, it be assumed, as it must be, that in the furtherance of its purpose, Congress can limit the hours of labor of employes engaged in interstate transportation, it follows that this power cannot be defeated either by prolonging the period of service through other requirements of the carriers, or by the commanding of duties relating to interstate and intrastate operations."

It appears that other objections were made to the validity of the statute; that it was void for uncertainty; that the Interstate Commerce Commission was without authority to require the reports called for by its order, and that to compel the disclosures by these reports of violations of the law would be contrary to the 4th and 5th amendments to the Constitution of the United States, having reference to unreasonable search and seizure and privilege against self-crimination. These objections

were all elaborately considered in the opinion and disposed of adversely to the contentions of the railroad company. The case, supra, effectually disposes of the objections raised in this case by counsel for appellant to the constitutionality of the act in question, and renders further consideration thereof by us unnecessary.

While, as previously stated, we have been referred to no case determining the carrier's liability for the **death of a train** employe while engaged in its service in violation of the restriction contained in the act limiting such service to sixteen consecutive hours, we find numerous cases which, in construing that part of the act, and a previous act, relating to the equipment of cars engaged in interstate commerce with safety appliances, hold that it abolishes the fellow servant doctrine and also the doctrine of assumption of risk; furthermore, that if a railroad in the operation of its cars violates a duty enjoined by the provisions of the act, which results in injury to an employe, such violation imposes upon it the duty to make compensation to the person injured. United States v. Atchison, T. & S. F. R. Co., 163 Fed. Rep., 517; Watson v. St. Louis, Iron Mountain & Southern R. R. Co., 169 Fed. Rep., 942; Southern R. R. Co. v. Carson, 194 U. S., 136; U. S. v. Atlantic Coast Line R. R. Co., 153 Rep., 918; U. S. v. Southern R. R. Co., 135 Fed. Rep., 122; U. S. v. Great Northern R. R. Co., 150 Fed. Rep., 229. In other words, as held in St. Louis, Iron Mountain & Southern R. R. Co. v. Taylor, 210 U. S., 281:

"The obvious purpose of the Legislature (i. e. Congress) was to supplant the qualified duty of the common law with an absolute duty, deemed by it more just. If the railroad does in point of fact, use cars which do not comply with the standard, it violates the plain provisions of the law, and there arises on that violation the liability to make compensation to one who is injured by it."

In Chicago, B. & Q. Ry. Co. v. U. S., July, 1911, Supreme Court Advance Sheets, 612, it was held that a carrier using, in moving interstate traffic, cars whose condition do not satisfy the requirements of the safety appliance act, cannot escape the penalty therein prescribed by showing that it exercised reasonable care in equipping its cars with the required safety appliances, and used due diligence to keep them in repair by the usual inspection, as the statutes impose an absolute duty upon the carrier which is not discharged by the exercise of reasonable care or diligence.

In the opinion, delivered by Mr. Justice Harlan, the reasoning and conclusions of the Court in the leading case of St. Louis, I. M. & S. R. R. Co. v. Taylor, 210 U. S. 281, were adopted, following which it is said:

"It cannot then be doubted that this court in the Taylor case considered the scope and effect of the safety appliance act of Congress as directly involved in the questions raised in that case, and it expressly decided that the provision in the second section relating to automatic couplers imposed an absolute duty on each corporation in every case to provide the required couplers on cars used in interstate traffic. It also decided that non-performance of that duty could not be evaded or excused by proof that the corporation had used ordinary care in the selection of proper couplers, or reasonable diligence in using them and ascertaining their condition from time to time. That the Taylor case as decided by this Court had been so interpreted and acted upon by the Federal courts generally is entirely clear, as appears from the cases cited in the margin. * * * * * * The Taylor case was a strictly civil proceeding, being an action by an individual to recover damages for a personal injury alleged to have been caused by the negligence of the corporation; whereas, the present action is to recover a penalty. This difference, it is suggested, will justify a reexamination, upon principle, of the rule announced in the Taylor case. In effect, the contention is that the present action for a penalty is a criminal prosecution, and that the defendant cannot be held guilty of a crime when it had no thought or purpose to commit a crime and endeavored with due diligence to obey the act of Congress. This contention is unsound because the present action is a civil one. It is settled law that 'a certain sum, or sum which can readily be reduced to a certainty, prescribed in the statute as a penalty for the violation of law, may be recovered by a civil action, even if it may also be recovered in a proceeding which is technically criminal.' Hepner v. U. S., 213 U. S. 103. * * * * * * The power of the legislature to declare an offense, and to exclude the elements of knowledge and due diligence from any inquiry as to its commission, cannot, we think, be questioned."

As further illustrating the harmony of opinion manifested by the Federal courts with respect to this question, consideration of the very recent case of Delk v. St. Louis & S. R. R. Co., July 1911 Advance Sheets, U. S.

Supreme Court Reports, 617, will be found instructive. Delk sued the St. Louis and San Francisco R. R. Co., a Missouri corporation, engaged in commerce as a carrier of freight and passengers through Missouri, Tennessee and other states, for damages resulting from injuries he sustained while engaged in the discharge of his duties as a brakeman of the railroad company. On the petition of the Railroad Company the case was removed to the Circuit Court of the United States on the ground of diversity of citizenship. The basis of the plaintiff's claim, as set forth in the declaration, was the alleged failure of the railroad company to provide proper automatic couplers as required by the safety appliance act. The answer of the railroad company traversed the averments of the declaration and pleaded contributory negligence on the part of the plaintiff.

It appears from the facts presented by the record that the car with the defective coupler which caused the injury was loaded with lumber and had been received by the railroad company to be carried to Memphis, Tennessee; the latter delivering it to the Union Railway Company for transportation to its destination. After receiving the car and before moving it, the Union Railway Company discovered that it was provided with a defective coupler and immediately returned it to the defendant railroad, which placed it on a side track in its yard, where it was examined by its inspector, who put upon it a placard containing the words "out of order." On the following day Delk was injured in an effort to couple the defective car to another for its removal from the side track. Owing to its defective coupling, he could not couple the cars without going between them, which he did, and in attempting with his foot to hold the draw bar of the defective car until the coupling of the cars could be effected by the impact, his foot was caught between them and crushed.

On the trial the circuit court seemed to have instructed the jury, in substance, that as a matter of law, the statute imposed upon the railroad company the absolute duty to keep its cars provided with the character of coupling appliances described in the statute, and that in failing to so provide the car by which Delk was injured and in attempting to move the car in its defective condition, it was guilty of negligence which entitled him to recover, unless he was himself guilty of negligence, which so contributed to his injury, that but for such neg-

ligence he would not have been injured. So the only issue submitted to the jury was as to the question of contributory negligence.

The trial in the circuit court resulted in a verdict and judgment in favor of Delk for $7,500.00 which that court compelled him, by remittitur, to reduce to $5,000.00. The Circuit Court of Appeals reversed the judgment and remanded the case for a new trial, following which the Supreme Court allowed a writ of certiorari, and upon a review of the errors assigned, that court reversed the judgment of the Circuit Court of Appeals, and affirmed the judgment of the circuit court.

In an able opinion delivered by Mr. Justice Harlan, the following conclusion was expressed:

"As the case is here upon certiorari to review the judgment of the Circuit Court of Appeals, this Court has the entire record before it, with the power to review the action of that court, as well as direct such disposition of the case as that court might have done when hearing the writ of error sued out for review of the action of the circuit court. Lutcher & M. Lumber Co. v. Knight, 217 U. S. 257. In this view the judgment of the Circuit Court of Appeals must be reversed, because, for the reasons above stated, it erred in not holding that the statute under which the case arose imposed on the carrier an absolute duty to provide its cars, when moving interstate traffic, with the required couplers and keep them in proper condition, and that, too, without any reference to the care or diligence which might have been exercised in performing its statutory duty. But on looking further into the record from the circuit court, we find that no error of law was committed by that court; for it proceeded on the construction of the statute which this Court has approved in Chicago, B. & Q. R. R. Co. v. United States, just decided. Nor did the circuit court committ any error in respect to any issue of contributory negligence. It properly submitted that question to the jury. Therefore, the reversal of the judgment of the Circuit Court of Appeals, on the ground we have above stated, constitutes no reason why the judgment of the trial court should be disturbed."

It should be stated in this connection that at the time of the trial of the Delk case, and until the original safety appliance act of 1893 was amended by that of April 22nd, 1908, contributory negligence on the part of a person injured by a defective car, could be relied upon by a rail-

road company, as a ground of defense in an action under the safety appliance statute for such injury; but the amendment in question, which was in force when the appellee's intestate in the instant case was injured, excludes such a defense. Schlemmer v. Buffalo R. & P. Co. July, 1911, Advance Sheets U. S. Supreme Court Reports, 561. As the defense of assumption of risk was abrogated by the original act, neither of these doctrines has any place in this case.

In view of the foregoing authorities, State and Federal, we conclude that the facts alleged by appellee in her petition, and fairly sustained by the evidence appearing in the record, fasten upon appellant responsibility for her intestate's death. If the grounds of defense interposed by the appellant's answer would be unavailing, had the intestate's death been caused by a defective appliance on one of its cars, they must, upon principle, be held equally so, where the death was caused by its wrongful act in requiring him to continue in the performance of his duties as a brakeman in its service, beyond sixteen consecutive hours, even though the negligence involved in the act was only a concurring cause, operating with the negligence of its engineer, in bringing about the death.

The requirements of the statute with respect to the safety appliances to be used on appellant's trains, are no more imperative or mandatory, than is the statutory restriction here involved upon its right to suffer its employes to engage in its service more than sixteen consecutive hours. The violation of the statute in either case invites the penalty prescribed, and the offender will not be excused upon a showing of reasonable effort or diligence in attempting to comply with the statutory requirements.

Appellant did not attempt to bring itself within the provisions of section 3 of the act of March, 1907, for its answer contains no plea that its violation of the statute was occasioned by casualty, unavoidable accident, the act of God, or any other cause allowed by that section as an excuse.

In our view of the case there was no error in the trial court's refusal to give the peremptory instruction asked by appellant, and it is not perceived that any just reason is presented for its objections to the instructions that were given to the jury.

Instruction No. 1 authorized a verdict for appellee if

the train by which her intestate was killed was at the time engaged in Interstate Commerce, and his death was caused by the negligence of the engineer in operating the train. We are unable to see any error in this instruction. It is conceded the train was engaged in Interstate Commerce, but whether so or not, if the intestate's death resulted from the negligence of the engineer alone, appellant would, as master, be responsible therefor, independently of its negligence in violating the sixteen hour law.

Instruction 2 merely defines the meaning of the words "Interstate Commerce," and is unobjectionable in form.

Instruction 3 properly defines negligence as used in the instructions; and by Instruction 4 the jury, in substance, were told that if they believed from the evidence appellee's intestate had been permitted or required by appellant to remain on duty as a brakeman continuously for more than sixteen consecutive hours, immediately before his death, appellant was negligent by reason thereof, and liable in damages for the intestate's death, if they further believed from the evidence such negligence contributed to his death; and if they so believed, they should find for appellee such damages as resulted from appellant's negligence in thus causing her intestate's death, not to exceed $25,000.00, the amount claimed in the petition.

This instruction correctly stated the law on the feature of the case intended to be covered by it, and as our reasons for this conclusion have already been fully stated, further elaboration of them is unnecessary.

Instruction 5 is but the converse of instruction 4, and while unnecessary, was not improper.

Instructions 1, 2, 3, 4 and 5 might have been more aptly expressed, but being substantially correct, mere inaptness of statement furnishes no ground for condemning them.

Appellant complains, however, that there was no instruction given the jury on the measure of damages. This is true, and such an instruction should have been given, but the failure of the court to give it is not ground for a reversal.

We have also held that where an improper instruction as to the measure of damages has been given, the error would be cured by the verdict of the jury, if such verdict be as small as it would have been, had the proper instruction been given. Ky. Distillery & Warehouse Co. v. Barrett, 112 S. W. 643; Katterjohn v. Nahm, et al., 106 S. W. 1179; 32 Ky. L. Rep. 727.

As appellee's intestate was a young man about thirty years of age with an expectancy, at least, of 27 years, it is apparent that the destruction of his power to earn money damaged his estate, even more than the three thousand dollars awarded by the verdict of the jury; it is patent, therefore, that the appellant's rights were not prejudiced by the failure of the court to give an instruction on the measure of damages.

Appellant also complains of the refusal of the circuit court to remove the case to the United States Circuit Court for the District of Kentucky. It appears that the courts of the several States are, by the provisions of the statute, supra, and the amendment of April 22nd, 1908, given jurisdiction concurrent with that of the courts of the United States, in cases arising under the statute. It is true, appellant's petition rested its right to the removal on the ground of diversity of citizenship, but as it took no exception to the action of the court in refusing the removal, its complaint of such refusal will not now be entertained.

In conclusion, we are moved to say that the salutary object designed by the enactment of the statute, supra, would, in our opinion, be defeated if we should hold its provisions inapplicable to a case like the one at bar. Its aim is the protection of the lives of employes of railroad companies, and also the lives and property entrusted to the railroads as common carriers. It recognizes that there is a limit to human endurance and that hours of rest and recreation, as well as the use of good machinery and appliances, are needful to the health and safety of men engaged in the hazardous work of railroading, and that the benefits it is intended to confer, will better enable them to serve their employers and promote the ends

of commerce. The application of the provisions of the statute may sometimes bear harshly upon an offending railroad company, but, on the whole, their just enforcement, in all proper cases, is bound to be promotive of the public welfare.

The errors assigned not justifying a reversal, the judgment is affirmed.