[No. 10,609.—In Bank.]

## IN THE MATTER OF MARY MAGUIRE.

SEX — WAITRESS — CONSTITUTIONAL LAW — ORDINANCE.—Section 32 of the ordinance of the City and County of San Francisco, prohibiting the employment of females in dance-cellars, etc., is unconstitutional and void.

ID.—ID.—ID.—ID.— PUBLIC MORALS.— MCKINSTRY, J., specially concurring, was of opinion that the supervisors, by proper legislation, may prevent women from pursuing avocations which, though permissible to men, involve such a propinquity of the sexes as may lead to immoral results. But that the ordinance is void, in that it is unreasonable, of ambiguous import, and not of uniform operation.

APPLICATION for the writ of *habeas corpus*.

The petition states that the petitioner is restrained of her liberty by P. Crowley, chief of police of the city and county of San Francisco.

*M. S. Horan*, for Petitioner.

*W. C. Graves*, for Respondent.

THORNTON, J.:

Mary Maguire petitions for a discharge from custody upon a warrant upon which she was arrested on a charge of having violated the following ordinance passed by the Board of Supervisors of the city and county of San Francisco, and approved by the Mayor in July, 1880:

" Section 32. Every person who causes, procures, or employs any female to wait or in any manner attend on any person in any dance-cellar, bar-room, or in any place where malt, vinous, or spirituous liquors are used or sold, and every female who in in such place shall wait or attend on any person, is guilty of a misdemeanor.

" No person owning or having charge or control of any drinking cellar, drinking saloon, or drinking place, or any place where malt, vinous, or spirituous liquors are sold and used, shall suffer or permit any female to be or remain in such drinking cellar, saloon, or drinking place between the hours of six o'clock P. M. and six o'clock A. M. No female shall be or remain in such drinking cellar, saloon, or place between such hours; *provided*, that this section shall not be construed so as to apply to hotels or restaurants or grocery stores, where the wife or daughter of the proprietor may happen to be in attendance; or public gardens, or to balls that are not given or held in drinking saloons or bar-rooms; *provided further*, that if the ball is given for the purpose of evading the provisions of this order, then this order shall be appliable."

The particular offense with which the petitioner is charged is that of waiting on persons in a bar-room where liquors were sold. The offense is against the provisions of the first paragraph in the ordinance as given above, and what is said herein relates to that portion of the ordinance only.

The discharge of the petitioner is claimed on the ground that the ordinance above mentioned is void, as being in conflict with § 18, article xx, of the Constitution of this State, which is in these words:

" No person shall on account of sex be disqualified from entering upon or pursuing any lawful business, vocation, or profession."

It is not asserted or claimed that the business in which she is engaged is not a lawful one, except for the ordinance in question and the provisions of § 306 of the Penal Code.

Is the ordinance in question in conflict with the above-quoted section of the Constitution?

It becomes, then, necessary to inquire in what sense the word "*disqualified*" is used in this section. It is presumed to be used in its natural and ordinary sense, unless there is something in the instrument which shows the contrary. ( *Weil* v. *Kenfield*, 54 Cal. 113.) The rule on this subject is thus stated by Marshall, C. J., in *Gibbons* v. *Ogden*, 4 Wheat. 188. The framers of the Constitution and the people who adopted it "must be understood to have employed words in their natural sense,

and to have intended what they have said." (Cooley's Const. Lim. 72.)

We find nothing in the Constitution which shows that the word is used in the section above considered in any other than its natural and ordinary sense.

What, then, is its ordinary and popular sense? Webster defines the verb *disqualify*, of which *disqualified* is the past participle, as follows :

" 1. To deprive of the qualities or properties necessary for any purpose; to render unfit; to incapacitate; usually with *for*."

" 2. To deprive of a legal capacity, power, or right; to *disable*, as a conviction of perjury disqualifies a man to be a witness."

(See same word in Worcester's dictionary.)

In our opinion the natural and ordinary sense of *disqualify* is to *incapacitate*, to *disable*, to divest or deprive of qualifications; and that it was used in this sense in the section under examination.

The language of the ordinance is plain, and its meaning unmistakable. It leaves nothing for construction. The words employed in this ordinance *incapacitate* a woman from following the business for which the petitioner was fined, and *disable* her from doing so. This being so, she is *disqualified* by the ordinance under consideration from pursuing a business lawful for men. We are compelled to adopt this, or admit that while the Legislature cannot disqualify a person on account of sex from following a lawful business by direct enactment, it may by indirection accomplish the same end by forbidding, under a penalty, the prosecution of such business. Such legislation as that just above indicated could only be considered an evasion of the Constitutional provision. Such an enactment would be as much a violation of the paramount law as one disqualifying by express words. A woman offending would be liable to the penalty for every day she was so employed. This would usually be considered as *disabling*, as imposing a disqualification, and therefore as disqualifying.

But it is further contended that the inhibition or disqualification is not on account of sex, but on account of its *immorality;*

that such employment of a woman is of a vicious tendency, and hurtful to sound public morality, and that this only is the object and design of the ordinance. It is not contended that such business is *malum in se*, but of a hurtful and immoral tendency. It may be admitted that such is its object and design, but this object is aimed to be accomplished by an ordinance which precludes a woman from a lawful business. It is said that the presence of women in such places has this tendency. If men only congregate, this tendency does not exist in so hurtful a degree; at any rate, it has not been regarded so hurtful, and has not fallen as yet under the legislative ban. So that it comes at last to this, that the preclusion and disqualification is on account of sex. As we have in effect said above, the attempt is thus made to do that by indirection which cannot be done directly. The organic law of the land annuls all such enactments. (*Cummings* v. *Missouri*, 4 Wall. 277; *People* v. *Albertson*, 55 N. Y. 50; *Taylor* v. *Commissioners of Ross County*, 23 Ohio N. S. 22.)

It is said that this is nothing more than the exercise of the police power which is vested in the city and county by § 11 of article xi of the Constitution. But is this provision in relation to the police power in the Constitution beyond the restriction of the section we have been examining?

To arrive at the meaning of the Constitution, as of any other writing, the whole of it must be examined. If there is an apparent conflict, it is the duty of courts to harmonize them, if it can be reasonably done, so as to give effect to every portion of the instrument. It is not to be supposed that an instrument of this character, every section of which was fully considered, has been framed with contradictory provisions. What was provided in one section may be restrained by the provisions of another.

The § 18 of article xx imposes a restraint on every law-making power in the State, whether an act of the Legislature, or an ordinance or by-law of a municipal corporation. It is a positive declaration, made by the sovereign authority, that whatever may be done under the legislative power, in any and every shape or form, shall never, by direct or indirect action, incapacitate any person on account of sex from entering upon or pursuing any lawful business, vocation, or profession. This power

to make police regulations is as much restrained by the section just referred to as is the legislative power vested in the Senate and Assembly. Both grants of power are alike made by the Constitution, and both are alike restricted by this section of article xx.

It may be further said of it that it is prohibitory in its character, and needs no legislation to make it active in its effect. It is self-executing, and struck with nullity all acts in existence inconsistent with it as soon as the Constitution went into operation, and all since passed. (*McDonald* v. *Patterson*, 54 Cal. 245.)

We have carefully weighed the arguments addressed to us on the point of immorality. But we must presume that all these considerations were discussed and weighed by the convention which framed the Constitution, and the people who adopted it; that they fully considered on the one hand the benefits which would spring from the adoption of a policy like that established by the section, and the bane on the other; and that on a just and fair balancing of the resulting good and evil, they determined to have the section as it is, as fixing and carrying out a policy, in their judgment, the best under the circumstances. As we understand the section, it does establish, as the permanent and settled rule and policy of this State, that there shall be no legislation either directly or indirectly incapacitating or disabling a woman from entering on or pursuing any business, vocation, or profession permitted by law to be entered on and pursued by those sometimes designated as the stronger sex. To adopt the conclusion to which the reasoning of the counsel for the people would lead us would be, in our judgment, to insert an exception to the general rule prescribed by this section. But there are no exceptions in the section, and neither we nor any other power in the State have the right or authority to insert any, whether on the ground of immorality or any other ground. All these are considerations of policy, the determination of which belonged to the convention framing and the people adopting the Constitution; and their final and conclusive judgment has been expressed and entered in the clear and unmistakable language of the Constitution itself, declaring the rule as above stated. The policy of the ordinance

is inconsistent with the policy intended and fixed by the Constitution. They cannot both stand.

The Constitution furnishes a rule for its own construction. That rule is that its provisions are " mandatory and prohibitory, unless by expressed words they are declared to be otherwise." (Art. i, § 22.) We find no such express words in the Constitution. This rule is an admonition placed in this the highest of laws in this State, that its requirements are not meaningless, but that what is said is meant, in brief, " we mean what we say." Such is the declaration and command of the highest sovereignty among us, the people of this State, in regard to the subject under consideration.

We will add here that the law-making power of the State is ample to make laws affecting both sexes alike, and not inhibited by the Constitution, which will accomplish the object so much desired—to prevent practices hurtful to public morality. The Constitution was not framed with a disregard of the important considerations urged upon us in this regard. It merely directs that a law which is framed to accomplish this object by affecting or operating upon lawful callings, shall affect both sexes alike. We are not at liberty to say that such important matters were overlooked in framing our organic law.

The ordinance and law both being unconstitutional, there is no offense, and there can be no valid conviction and sentence; hence no jurisdiction for any purpose. (*Ex parte Kearney*, opinion filed May 27th 1880 ; *Ex parte Siebold*, 100 U. S.; 10 Otto, 375–377, opinion of the Court by Bradley, J.; *Ex parte Clarke*, id. 402, 405–407, dissenting opinion in case, and in *Ex parte Siebold*, per Field, J.; *In re Wong Yung Quy*, 6 Saw. 237 ; *In re Parrott*, id. 349.

From the foregoing, it follows that the section of the Penal Code above referred to and the ordinance are both alike in conflict with and inconsistent with the Constitution, and therefore void. They ceased when the Constitution went into effect (art. xxii, § 1), if passed before it; the same is true, of course, if enacted since.

The petitioner is entitled to her discharge, and it is so ordered.

SHARPSTEIN, J., and McKEE, J., concurred.

McKINSTRY, J., concurring:

I concur in the judgment. I am not prepared to say, however, that the supervisors cannot, by proper legislation, prevent females from pursuing avocations which, although permissible to men, involve a propinquity of the sexes under such circumstances as may lead directly to immoral results, or to the desecration of the prudent reserve between members of the opposite sexes, which it is the province of wise legislation to encourage. It has always been understood that the prevention of such results was a proper exercise of the police power of the State. By such legislation the woman (or the man, as the case may be) is not prohibited from pursuing any lawful business, vocation, or profession "on account of her sex"; she is prohibited because of the immorality or indecency connected with the business. For example: There might be very good reason why women (and not men) should be employed as attendants at a *bathing* establishment to which their own sex alone have admission; but if a law should be enacted prohibiting the employment of females as attendants at public baths—frequented by men only—would it be adjudged that the law was unconstitutional because persons would thereby be prohibited from pursuing a vocation "on account of sex"? The Constitution provides that no persons shall be prohibited from pursuing any *lawful* business *merely* because of his or her sex, but it does not prohibit the Legislature from declaring certain conduct unlawful, even though it may constitute a "business." The Constitution does not, in my view, deny the power to enact such legislation as may prevent the intrusion of men into the *conjoint* pursuit with women of occupations which considerations of decency and morality require should be carried on by the latter separately, and *vice versa*. It is possible that the Legislature is not permitted to indulge in an over-refined sense of propriety—amounting to mere sentimentality—and thus exclude females from taking part in honest occupations simply because they have in the past ordinarily been carried on solely by men, and may therefore seem, in the prejudiced eyes of a more fortunate portion of the community, to detract from the modest reserve and retirement of the sex. But when competent legislative author-

ity has declared that the pursuit of certain occupations by females impinges upon public decency, or, in its consequences, may involve a violation of public morality, I think the Courts can declare the law unconstitutional *only* when it clearly appears that indecency and immorality are not connected with, nor a consequence of, the prosecution of such occupations by females.

But while I am not prepared to agree that § 18 of article xx of the Constitution prohibits any law or ordinance which would prevent the presence of women, as attendants or otherwise, at liquor "saloons, bar-rooms," etc., I agree that petitioner should be discharged, because I am of opinion that the ordinance (under which petitioner has been prosecuted) is *void*, in that it is *unreasonable*, of ambiguous import, and not of uniform operation. The practice which, in effect, is declared to be deleterious to the public welfare is the presence of females as waiters or attendants upon the guests at any place where malt, vinous, or spirituous liquors "are *used* or sold," and the *presence* of females in such places during certain hours of the night. The very presence of females at such places in the night being prohibited, their presence in the capacity of waiters is prohibited. Yet the ordinance contains the exception, that where the wife or daughter "may happen to be *in attendance*," she may pursue without *punishment* the avocation from which her sisters are *debarred*. The ordinance further prohibits the presence of women at *public balls* where liquors are sold, provided the ball "is not given for the purpose of evading the provisions of the ordinance." This last clause would seem to prohibit the presence of women at public balls where the dancing is a *pretext*, and the real purpose is to secure the presence of women where liquor was sold. But if this is its meaning, the ordinance again fails of uniformity, since the presence of women, or even their service as attendants, is not prohibited in places which are not really established with an intent to secure profit from them as "hotels or restaurants or grocery stores," but which take on the outward pretense of such—the object being simply the sale of intoxicating agents.

I concur in the judgment.

Myrick, J., dissenting:

I dissent. If the petitioner had been charged with being or remaining in a hotel, restaurant, or grocery store, I could see strong reason for concurring in the conclusion reached by Mr. Justice McKinstry, because the charge would have been of an act not made criminal if done by the wife or daughter of the proprietor.

It does not appear, however, that the act with which the petitioner was charged is within the exception named in the ordinance.

Morrison, C. J., dissenting:

I cannot concur in the views of Mr. Justice Thornton, and therefore dissent.