COMMONWEALTH *vs.* RICHARD G. RILEY.

Bristol.    October 23, 1911. — January 1, 1912.

Present: RUGG, C. J., HAMMOND, BRALEY, & DeCOURCY, JJ.

</div>

*Labor*, Employment of women. *Constitutional Law. Pleading, Criminal,* Complaint.

The provisions of St. 1909, c. 514, § 48, limiting the time during which women may be employed in manufacturing and mechanical establishments to fifty-six hours in each week and to ten hours in each day, "unless a different apportionment of the hours of labor is made for the sole purpose of making a shorter day's work for one day of the week," except that where employment is by seasons the hours of labor in each week may exceed fifty-six but not fifty-eight hours if the total number of hours of such employment in any year shall not exceed an average of fifty-six hours in each week for the whole year excluding Sundays and holidays, were constitutional.

While those provisions of St. 1909, c. 514, § 48, (which remain in force after the amendment of another portion of the section by St. 1911, c. 484,) requiring one employing women or children in a manufacturing or mechanical establishment to post in a conspicuous place in every room "in which such persons are employed a printed notice stating the number of hours' work required of them on each day of the week, the hours of commencing and stopping work, and the hours when the time allowed for meals begins and ends," do not require that such a notice shall be posted as to the hours of labor of women or children hired temporarily or intermittently to perform tasks subsidiary to the main business of the establishment, they do require a posting of such a notice with regard to the hours of labor of all women and children regularly employed in the establishment in labor practically permanent.

The means provided by St. 1909, c. 514, § 48, for enforcing the provisions of that section with regard to the hours of labor of women and children in manufacturing and mechanical establishments by the posting of certain notices stating their hours of labor and of intermissions for meals and the infliction of a penalty for a failure to do so, when read with the other provisions of the statute, are not unreasonable, unnecessary or arbitrary and are within the powers of the Legislature.

A criminal complaint charged that the defendant on a certain date in February, 1910, "being then and there the superintendent of" a certain corporation carrying on

a certain manufacturing establishment in which women were employed and in which the corporation had caused to be posted and had maintained on the date named in a conspicuous place "in a certain room therein in which said room were employed certain women," among them a woman named C, "printed notice that said women were required to work in laboring during the hours set forth in said notice" with an hour out for dinner beginning at 12 and ending at 1 P. M., "did then and there employ" C "in laboring in said mill and in the room in which said notice was posted . . . at a time other than that stated in said printed notice, to wit, at five minutes of one o'clock" on the day named, such employment not being by reason of time lost through the stopping of machinery upon which she was employed or dependent for employment. *Held,* that the complaint sufficiently charged a violation of St. 1909, c. 514, §§ 48, 49.

Although by § 70 of St. 1909, c. 514, the superintendent of a manufacturing establishment, in which are posted proper notices of the hours of labor of women therein in accordance with the requirements of § 48 of the statute, cannot be held responsible for a violation of that section if a woman works in the establishment during a part of the time allowed in the notice for meals without his "orders, consent or knowledge," one who is such a superintendent and has general charge of the operations of the establishment, the overseers thereof being subject to his orders, may be found guilty of a violation of § 48 in employing a woman in a certain room therein five minutes before the end of an hour stated upon notices of the hours of labor for women in that room to be the hour set apart for dinner, upon evidence that tended to show merely that the machinery therein was started by an overseer five minutes before the hour, that a woman therein then did some work on one machine, and that afterwards, when spoken to regarding the matter by a State inspector, the superintendent said, "Wasn't it all right, five minutes of?"

COMPLAINT received and sworn to in the Second District Court of Bristol on March 1, 1910, charging the defendant with a violation of St. 1909, c. 514, §§ 48, 49, in that on February 24, 1910, "being then and there the superintendent of the Davol Mills," a corporation carrying on a manufacturing establishment in Fall River, in which women were employed and in which the corporation had caused to be posted and had maintained on February 24 "in a conspicuous place in said establishment in a certain room therein in which said room were employed certain women," among them one Nora Callahan, "printed notice that said women were required to work in laboring during the hours set forth in said notice," which were from 6.50 A. M. to 6 P. M. with an hour for dinner beginning at 12 and ending at 1 P. M., "did then and there employ" Nora Callahan "in laboring in said mill and in the room in which said notice was posted . . . at a time other than that stated in said printed notice, to wit, at five minutes of one o'clock" on February 24, 1910, such employment not being by reason of time lost through the stop-

ping of machinery upon which she was employed or dependent for employment.

On appeal to the Superior Court, the case was tried before *Dana*, J. Before the jury were empanelled, the defendant moved to quash the indictment on the following grounds:

"1. It alleges that the defendant personally employed women at a time other than that stated in a notice posted by another.

"2. The provision of the statute under which the offense is alleged to have been committed by the defendant's violation thereof is unconstitutional and void.

"3. It charges two offenses in one count."

The motion was denied; and the defendant alleged an exception.

There was evidence at the trial tending to show that the allegations of the complaint with regard to the posted notice were true, that Nora Callahan was employed in the carding room of the Davol Mills, that the defendant was the superintendent of the mills and had general charge of their operations, that the overseers were subject to his orders, that on the day named in the complaint a State factory inspector went into the carding room in question and at five minutes of one saw the overseer, not the defendant, come out of the office, look at his watch and start the first speeder frame. Nora Callahan then started her frame which was right back of the one started by the overseer, saw that everything was in proper running order and then walked to the window. The inspector afterwards asked the defendant if he was aware of the time they were starting up. He said, " Wasn't it all right, five minutes of? " and asked if they were not allowed five minutes.

At the close of the evidence, the defendant asked the presiding judge to rule as follows:

"1. There is no evidence that will warrant the jury in finding the defendant guilty of any offense under the laws of this Commonwealth.

"2. Unless the jury are satisfied beyond a reasonable doubt that the defendant himself employed the alleged woman, the defendant is not guilty.

"3. On the whole evidence the defendant is not guilty."

The rulings were refused. The jury returned a verdict of guilty; and the defendant alleged exceptions.

*A. J. Jennings*, for the defendant.

*F. B. Fox*, Assistant District Attorney, for the Commonwealth.

Rugg, C. J.    This is a complaint against the defendant as superintendent of the Davol Mills for employing a woman contrary to the provisions of St. 1909, c. 514, § 48. This section limits the time during which minors under the age of eighteen years and women may be employed in labor in manufacturing and mechanical establishments, to fifty-six hours in each week, and to ten hours in each day, "unless a different apportionment of the hours of labor is made for the sole purpose of making a shorter day's work for one day of the week," except that where employment is by seasons the hours of labor in each week may exceed fifty-six, but not fifty-eight, if the total number of hours of such employment in any year shall not exceed an average of fifty-six hours in each week for the whole year, excluding Sundays and holidays. St. 1911, c. 484, by which the basis of the labor for each week has been reduced from fifty-six to fifty-four hours, was not in force at the time of the offense here complained of.

1. The constitutionality of a statute restricting the hours of employment of women and children in a single manufacturing service was upheld in 1876 by this court. *Commonwealth* v. *Hamilton Manuf. Co.* 120 Mass. 383. See also *Opinion of the Justices*, 163 Mass. 589, at 594. There can be no doubt as to the constitutionality of such a statute in its application to minors, who are not *sui juris*, and are in some respects wards of the State. See *Berdos* v. *Tremont & Suffolk Mills*, 209 Mass. 489. But the subject latterly has been debated rather widely, so far as applicable to adult women. There appears, however, to be no ground to doubt the soundness of our somewhat early decisions, and we adhere to it, both on reason and on the doctrine of *stare decisis*. Recently such statutes have been held to be valid under the Federal Constitution and generally in other jurisdictions. *Muller* v. *Oregon*, 208 U. S. 412, affirming *State* v. *Muller*, 48 Ore. 252. *Wenham* v. *State*, 65 Neb. 394. *State* v. *Buchanan*, 29 Wash. 602. *Commonwealth* v. *Beatty*, 15 Penn. Sup. Ct. 5, 17. *Withey* v. *Bloem*, 163 Mich. 419. *Ritchie* v. *Wayman*, 244 Ill. 509.

*People* v. *Bowes-Allegretti Co.* 244 Ill. 557. We do not regard *Burcher* v. *People*, 41 Col. 495, and *In matter of Mary Maguire*, 57 Cal. 604, which were decided according to peculiar constitutional provisions of these States, as bearing upon the question. In *Ritchie* v. *People*, 155 Ill. 98, a statute limiting the hours of labor for women to eight hours in each day and forty-eight hours in each week was held unconstitutional. On the distinction between the eight-hour and a ten-hour day, a distinction which in reason seems rather difficult to maintain, this case is not treated plainly by the court as overruled in *Ritchie* v. *Wayman*, 244 Ill. 509, where an act restricting such labor to ten hours in each day was upheld. But however that may be, it is certain that the difference between an act of the Legislature which permits women to labor in designated employment fifty-six hours in each week, and one permitting such labor for not more than sixty hours is so small as not to require a difference in the application of constitutional principles. Whatever may be the bounds fixed by the natural and constitutional rights to freedom of all individuals, including women, to the power of the Legislature to determine maximum hours of labor for women, it is clear that the present statute does not transgress those bounds.

2. This statute plainly prohibits the employment of women longer than fifty-six hours in any week, or longer than ten hours in any day, save for the purpose of securing shorter hours of labor on one day within the maximum of fifty-six hours per week, and for other purposes not here in issue. The complaint at bar is not framed upon that part of the statute. It is not claimed that the defendant employed any laborers for a longer period in any day or week than the law permits.

3. The crime which is charged is that first created by St. 1902, c. 435, and retained in subsequent re-enactments. It is necessary to examine with exactness precisely what is inhibited. The first part of said § 48 provides that "No child and no woman shall be employed in laboring" in the specified occupations except as permitted. It then enacts that "Every employer shall post in a conspicuous place in every room in which such persons are employed a printed notice stating the number of hours' work required of them on each day of the week, the hours of commencing and stopping work, and the hours when the time allowed for

meals begins and ends . . . [with a further provision in said c. 514, § 67, that the meal hour shall be the same where the women and children employed number five or more, save that an exception is made in § 69 of certain employments where continuous processes are required]. The employment of such person at any time other than as stated in said printed notice shall be deemed a violation of the provisions of this section," with exceptions not here material.

The meaning of this language must be determined. It ought to be read in the light of the general purpose of the Legislature in enacting it. That purpose was to establish the rights of children and women, who are treated as in a certain sense dependent and under an industrial disadvantage by reason of age and sex, to regular hours of employment for limited and designated periods of time with fixed intervals for rest and refreshment, and to protect them in the enjoyment of the rights thus established, to the end that the health and endurance of the individual may be insured and the ultimate strength and virility of the race be preserved. The requirement for the posting of notices where "such persons" are employed means wherever women and children are regularly employed for any substantial number of hours daily. It applies to every employer of "such persons." Both phrases are wholly general and without restriction or exception. It is not fairly open to the construction that it applies only to establishments where "such persons" are regularly employed more than ten hours in any one day, and that it does not affect those when on no day is there employment for more than ten hours. All those, who in manufacturing and mechanical establishments employ women and children in practically permanent labor, are required to post the notices which fix definitely the hours of work. As was pointed out in *Commonwealth* v. *Osborn Mill*, 130 Mass. 33, statutes of that character are not intended, either by letter or in spirit, to apply to any except women employed permanently, who labor for full working days, whatever the length may be. The statute does not apply to those who are hired temporarily or intermittently to perform tasks subsidiary to the main business of the factory or shop. A woman engaged for an hour or two a day sweeping the floors or washing windows, although perhaps technically in some aspects a laborer, would not come

within the purview of the statute, having regard to the ends to be subserved by it and the general grounds on which its constitutionality is sustained. But the requirement of the statute is that as to those regularly employed for the full shop day there must be a posting of the notices with the definite statement of the hour of starting, the limits of time for the intermission, and the hour of closing. These hours may be fixed by agreement of parties with absolute freedom within the maximum permitted save, in a particular not here material. But when once fixed they must be rigidly adhered to. Employment of women and children outside the hours thus agreed upon is prohibited, and infraction of this prohibition is punishable as a crime.

4. This being the meaning of this section of the statute, the question is whether as thus construed it is constitutional. Arguments which would be decisive against its constitutionality if it applied to men as well as to women (*Lochner* v. *New York*, 198 U. S. 45, *Opinion of the Justices*, 208 Mass. 619, 622) may be laid aside. It is to be noted that it applies only to " manufacturing " and " mechanical " establishments. These words as defined in § 17 of the same act include those places popularly known as mills and shops, where, as matter of common knowledge, continuously operating machinery and constant service by attendants throughout the whole day are not essential to economical manufacture, and where ordinarily machinery is stopped for the noon hour. The statute does not extend in that respect to stores or to branches of manufacture or industry where continuity of labor by somebody is necessary from the beginning to the end of the work day. Other provisions are made for these classes of employment. See said c. 514, §§ 47, 68, 69, 70, which recognize the practical difficulty, if not impossibility, of requiring a suspension of all labor by regular employees during a midday or other meal intermission, and do not prohibit labor except before the beginning and after the end of the established working day. A classification of employment of women and children confined to manufacturing and mechanical establishments of this character is within the legislative power. Such a classification is sustained as valid when it can be ascertained to rest upon some sound principle, and to be not arbitrary in its nature. There is a legislative right of reasonable selection among various businesses and indus-

tries for the operation of laws general in their application on the basis chosen, and so long as this selection is not arbitrary, whimsical, unnecessary or unreasonable, it cannot be pronounced unconstitutional. The classification of manufacturing establishments alone for limitation of hours of labor by women was held constitutional in *Commonwealth* v. *Hamilton Manuf. Co.* 120 Mass. 383. See also for kindred illustrations of the principle, in addition to cases heretofore cited, *Dewey* v. *Richardson,* 206 Mass. 430; *Griffith* v. *Connecticut,* 218 U. S. 563; *Lindsley* v. *Natural Carbonic Gas Co.* 220 U. S. 61; *Atkin* v. *Kansas,* 191 U. S. 207; *Chicago, Rock Island & Pacific Railway* v. *Arkansas,* 219 U. S. 453; *Assaria State Bank* v. *Dolley,* 219 U. S. 121.

It may be conceived that the purpose of requiring by the imposition of a penalty a strict observance of the posted hours of labor was to facilitate the enforcement of the law. It might be regarded as difficult to detect violations of the prohibition against employment for a longer time in the day or week than is allowed, while it would be comparatively easy to observe working outside of designated hours. Although difficulty in enforcing a statute can never justify unconstitutional "modes of accomplishing a laudable purpose, and of carrying into effect a good and wholesome law" (*Fisher* v. *McGirr,* 1 Gray, 1, 31), reasonable regulations to this end should be upheld. When the constitutionality of the statute limiting the hours of labor of women is settled, the means by which the aim of the statute may be forwarded within reasonable bounds are matters for legislative determination. This statute requires the hours of labor to be stipulated in advance, and then to be followed until a change is made. It does not by its terms establish a schedule of hours. This is left to the free action of the parties. Nor does it in the sections now under consideration restrict the right to labor to any particular hours. See *People* v. *Williams,* 189 N. Y. 131. It simply makes imperative strict observance of any one table of hours of labor while it remains posted.

The end of the statute is the protection of women within constitutional limits, and the requirement that the hours posted in the notice shall be followed is a means to effectuate the attainment of that end. That it in substance also requires performance of the contract implied from laboring under the notice does not

detract from the force of the prohibition.  See *Ellis* v. *United States*, 206 U. S. 246, 255.  It is not an impairment of the freedom of contract of the citizen to require that certain terms of a contract shall be posted in such form as not to be subject to mistake or dispute.  This in principle is going no further than the statute of frauds goes.  The property of the woman in her labor is not taken away, nor are the privileges and immunities of citizenship unduly abridged thereby.  The rights of the employer are secured against the whim, caprice, mistake or ill-will of the laborer by § 70 of the act, which requires actual knowledge or consent on the part of the employer or his superintendent or overseer or agent to the violation of the time fixed in the posted notice before there can be guilt.  This statute is regulation to a small detail; it is close to the line, but we cannot say that, the end being constitutional, this means of reaching that end are unreasonable, unnecessary or arbitrary, and hence beyond the power of the Legislature.  The section of the statute under which this complaint is made, taken in connection with the other provisions to which we have referred, is not obnoxious to the Constitution of the United States or of this Commonwealth.

5. The complaint is sufficient in form.  It alleges that the woman, whose employment outside of the hours posted in the notice is charged, was " required to work in laboring during the hours set forth in said notice," and thus avoids the defect which was held to be fatal in *Commonwealth* v. *Osborn Mill*, 130 Mass. 33.  It alleges also that the defendant, being then and there the superintendent of a named manufacturing corporation, " did then and there employ in laboring in said mill " a certain woman.  This is a sufficiently direct and positive averment, that the defendant employed the woman in his capacity as superintendent, and brings him within the substance of the description " as superintendent . . . for another " used in § 49 of said c. 514.  Nothing is left to inference or implication as in *Commonwealth* v. *Dunn*, 170 Mass. 140, 142, relied on by the defendant.

6. The evidence on which the defendant was found guilty appears to be meagre.  But in view of decided cases it is not so slight as to be capable of being pronounced insufficient.  It could not have been ruled rightly that the defendant did not employ the woman.  The word " employ " is used in divers significations,

such as to have work or to make use of the service of another. *Bingham* v. *Scott*, 177 Mass. 208, 211. In this sense it cannot be said the defendant as superintendent did not employ Nora Callahan by allowing her to work in the carding room of the mill. The concession by the defendant that as superintendent of the Davol Mills he had general charge of the operations of the mill, and that the overseers were subject to his orders could have been found to make the defendant as responsible for the act of an overseer in permitting or consenting to the work of Nora Callahan as he would have been if himself the employer. This means that he might have been found guilty, even though ignorant of the specific act in question. But he could have been held liable for such an act by one of his overseers only if he participated in the prohibited act, or authorized, approved or countenanced it in such a way as to assume initial responsibility for it. It must be assumed that adequate and comprehensive instructions were given upon this point. The only question raised by the defendant in this connection is that there was not sufficient evidence to warrant a conviction. This ruling could not have been given in view of *Commonwealth* v. *Nichols*, 10 Met. 259, *Commonwealth* v. *Briant*, 142 Mass. 463, *Commonwealth* v. *Stevens*, 153 Mass. 421, and *Commonwealth* v. *Riley*, 196 Mass. 60.

The other exceptions are either expressly waived or treated as waived because not argued.

*Exceptions overruled.*