Argued February 18, affirmed March 17, rehearing denied July 7, 1914.

# STATE *v.* BUNTING.*

### (139 Pac. 731.)

**Constitutional Law—Privileges and Immunities of Citizens—Due Process of Law—Equal Protection of Law.**

1. Laws of 1913, Chapter 102, prohibiting the employment of any person in any mill, factory, or manufacturing establishment more than 10 hours in a day, can be sustained only under the police power, since the right to labor or employ labor on terms stipulated by the parties is a property right guaranteed by United States Constitution, Amendment 14, providing that no state shall make any law abridging the privileges or immunities of citizens of the United States, nor deprive any person of property without due process of law, nor deny the equal protection of the law.

[As to what is due process of law, see notes in 24 Am. Dec. 538; 20 Am. St. Rep. 554. As to what is equal protection of laws, see note 25 Am. St. Rep. 873.]

**Constitutional Law—Privileges and Immunities of Citizens—Due Process of Law—Equal Protection of Law.**

2. The right to labor and to employ labor is subject to reasonable limitations necessary to promote the health, general welfare, and intelligence of the citizens, and the peace and good order of the state; United States Constitution, Amendment 14, not being designed to limit the right of the state under its police power to prescribe such regulations.

**Master and Servant—Regulation of Employment—Hours of Labor.**

3. The hours of labor in industries in which too many hours of service in one day would be injurious to the health and well-being of the operatives may be reasonably regulated by the state under the police power, and this power legitimately exercised can neither be limited by contract nor bartered away by legislation.

[As to constitutionality of statutes limiting the hours of a day's labor, see note in Ann. Cas. 1912D, 393.]

**Constitutional Law—Police Power—Extent.**

4. While the police power cannot excuse the enactment of unreasonable, oppressive, or unjust laws, it may be legitimately exercised to preserve the public health, safety, morals, and general welfare.

**Constitutional Law—Equal Protection of Law—Nature of Discrimination.**

5. The limitation of Laws of 1913, Chapter 102, prohibiting employment of labor for more than 10 hours in one day to mills, factories, and manufacturing establishments, is not an unconstitutional discrimination.

*As to the constitutionality of statute limiting hours of labor, see notes in 19 L. R. A. 141; 21 L. R. A. 796; 65 L. R. A. 38; 12 L. R. A. (N. S.) 1130; 26 L. R. A. (N. S.) 242; 35 L. R. A. (N. S.) 628; and 40 L. R. A. (N. S.) 893.                                  REPORTER.

Constitutional Law—Determination of Constitutional Questions—Presumptions.

6. All reasonable intendments will be made in favor of a law not obviously void on its face, and it will be presumed that the legislature has acted within constitutional limitations.

[As to the caution courts observe in respect to declaring laws void, see note in 48 Am. Dec. 269.]

Master and Servant—Regulation of Employment—Hours of Labor.

7. Laws of 1913, Chapter 102, prohibiting the employment of any person in any mill, factory, or manufacturing establishment for more than 10 hours in one day, except night watchmen, persons engaged in making necessary repairs, and, in cases of emergency, providing that employees may work overtime not to exceed three hours in a day at the rate of time and one half the regular wage, is a proper police regulation, and does not violate the Constitution of the United States or of the state.

Master and Servant—Regulation of Employment—Hours of Labor.

8. In Laws of 1913, Chapter 102, prohibiting the employment of labor in mills, factories, and manufacturing establishments for more than 10 hours per day, a proviso permitting employees to work overtime not to exceed three hours in a day at the rate of time and a half the regular wage does not render the whole act void.

From Lake: HENRY L. BENSON, Judge.

The defendant, F. O. Bunting, was tried and convicted of employing a man to labor in his manufacturing establishment for more than 10 hours, to wit, for 13 hours in one day, in violation of Laws of 1913, Chapter 102, and alleging that the act in question is unconstitutional, appeals. The facts developed are set forth in the opinion of the court.    AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. W. Lair Thompson.*

For the State there was a brief over the names of *Mr. Andrew M. Crawford,* Attorney General, *Mr. James W. Crawford,* Assistant Attorney General, and *Mr. O. C. Gibbs,* with an oral argument by *Mr. James W. Crawford.*

In Banc.    MR. JUSTICE BEAN delivered the opinion of the court.

Section 1 of the act declares as follows:

"It is the public policy of the State of Oregon that no person shall be hired, nor permitted to work for wages, under any conditions or terms, for longer hours or days of service than is consistent with his health and physical well-being and ability to promote the general welfare by his increasing usefulness as a healthy and intelligent citizen. It is hereby declared that the working of any person more than ten hours in one day, in any mill, factory or manufacturing establishment is injurious to the physical health and well-being of such person, and tends to prevent him from acquiring that degree of intelligence that is necessary to make him a useful and desirable citizen of the state."

Section 2 enacts the following:

"No person shall be employed in any mill, factory or manufacturing establishment in this state more than ten hours in any one day, except watchmen and employees when engaged in making necessary repairs, or in case of emergency, where life or property is in imminent danger; provided, however, employees may work overtime not to exceed three hours in any one day, conditioned that payment be made for said overtime at the rate of time and one half the regular wage."

Section 3 provides a penalty for a violation of the statute.

Defendant demurred to the indictment upon the ground that the legislative enactment alleged to have been violated is invalid, because repugnant to the Constitution of the United States and to that of the State of Oregon.

1. It is contended that the statute violates the right of contract, the right of property, and that it is class legislation and void. The fourteenth amendment to the Constitution of the United States, which it is claimed the act contravenes, declares, *inter alia,* that "no state shall make or enforce any law which shall

abridge the privileges or immunities of citizens of the
United States; nor shall any state deprive any person
of life, liberty, or property, without due process of
law; nor deny to any person within its jurisdiction the
equal protection of the laws.'' Article I, Section 20, of
the Constitution of this state is as follows:

"No law shall be passed granting to any citizen or
class of citizens, privileges or immunities which, upon
the same terms, shall not equally belong to all citizens."

To give the act vitality it must be done by virtue of
the police power of the state.

2. It is an announced principle of law that the right
to labor or to employ labor on such terms and conditions as may be stipulated by the contracting parties
is not only a liberty, but a property right guaranteed
to every citizen by the fourteenth amendment above
quoted. Such right cannot be arbitrarily or unreasonably interfered with by the legislature: *State* v. *Muller,* 48 Or. 252 (85 Pac. 855, 120 Am. St. Rep. 805, 11
Ann. Cas. 88; affirmed in 208 U. S. 412, 52 L. Ed. 551,
28 Sup. Ct. Rep. 324, 13 Ann. Cas. 957). The right to
labor and to employ labor, like all other rights, is itself
subject to such reasonable limitations as are necessary
to promote the health, general welfare, and intelligence of the citizens, and the peace and good order of
the state. To this end a large discretion is from
necessity vested in the lawmakers to determine not
only what the interests of the public require but what
measures are necessary for the protection of such
interests: *State* v. *Muller,* 48 Or. 252 (85 Pac. 855, 120
Am. St. Rep. 805, 11 Ann. Cas. 88, 208 U. S. 412, 52
L. Ed. 551, 28 Sup. Ct. Rep. 324, 13 Ann. Cas. 957);
*State* v. *Baker,* 50 Or. 381 (92 Pac. 1076, 126 Am. St.
Rep. 751, 13 L. R. A. (N. S.) 1040); *Lawton* v. *Steele,*

152 U. S. 133, 136 (38 L. Ed. 385, 14 Sup. Ct. Rep. 499);
*Mugler* v. *Kansas,* 123 U. S. 623 (31 L. Ed. 205, 8 Sup.
Ct. Rep. 273, 296); *Holden* v. *Hardy,* 169 U. S. 366 (42
L. Ed. 780, 18 Sup. Ct. Rep. 383); *Ritchie & Co.* v.
*Wayman,* 244 Ill. 509 (91 N. E. 695, 27 L. R. A. (N. S.)
994); *State* v. *Buchanan,* 29 Wash. 602 (70 Pac. 52, 92
Am. St. Rep. 930, 59 L. R. A. 342); *In re Boyce,* 27
Nev. 299 (75 Pac. 1, 1 Ann. Cas. 66, 65 L. R. A. 47, 57);
Cooley, Const. Lim., p. 830. By the adoption of the
fourteenth amendment· it was not designed nor in-
tended to curtail or limit the right of the state under
its police power to prescribe such reasonable regula-
tions as might be essential to the promotion of the
peace, welfare, morals, education, or good order of the
people. It was adopted primarily to protect the then
newly liberated negroes of the south from practical re-
enslavement by their former masters, and to authorize
Congress to protect the civil rights of these persons
by appropriate legislation: Reports of Committees of
House, 39th Congress, 1st Sess., Vol. 2, p. 13 et seq.
To now invoke its provisions to perpetuate industrial
servitude would be a perversion of its beneficent pur-
poses.

3. The hours of labor in certain industries, in which
too many hours of service in one day would be in-
jurious to the health and well-being of the operatives,
may be reasonably regulated by the state, under its
police power. This power legitimately exercised can
neither be limited by contract nor bartered away by
legislation. We quote from *Hurtado* v. *California,*
110 U. S. 516, 530 (28 L. Ed. 232, 4 Sup. Ct. Rep. 111,
118): "The Constitution of the United States was or-
dained, it is true, by descendants of Englishmen, who
inherited the traditions of English law and history; but
it was made for an undefined and expanding future,

and for a people gathered and to be gathered from many nations and of many tongues'': See *Holden* v. *Hardy,* 169 U. S. 388 (42 L. Ed. 780, 18 Sup. Ct. Rep. 383). The extent and limitations upon the police power of a state are well stated by Mr. Chief Justice SHAW in *Commonwealth* v. *Alger,* 7 Cush. (Mass.) 53, 84:

''We think it is a settled principle, growing out of the nature of well-ordered civil society, that every holder of property, however absolute and unqualified may be his title, holds it under the implied liability that his use of it may be so regulated, that it shall not be injurious to the equal enjoyment of others having an equal right to the enjoyment of their property, nor injurious to the rights of the community. All property in this commonwealth, as well that in the interior as that bordering on tide waters, is derived directly or indirectly from the government, and held subject to those general regulations which are necessary to the common good and general welfare. Rights of property, like all other social and conventional rights, are subject to such reasonable limitations in their enjoyment as shall prevent them from being injurious, and to such reasonable restraints and regulations established by law, as the legislature, under the governing and controlling power vested in them by the Constitution, may think necessary and expedient.''

4. The police power cannot be forwarded as an excuse for the enactment of unreasonable, oppressive, or unjust laws. Yet it may be legitimately exercised for the purpose of preserving the public health, safety, morals, and general welfare: *Davidson* v. *New Orleans,* 96 U. S. 97 (24 L. Ed. 616); *Yick Wo* v. *Hopkins,* 118 U. S. 356 (30 L. Ed. 220, 6 Sup. Ct. Rep. 1064). We quote from the majority opinion in *Re Ten-Hour Law for Street Ry. Corporations,* 24 R. I. 603, at page 605 (54 Atl. 602, at page 603, 61 L. R. A. 612):

"There is also a common assent that the legislature has the right of control in all matters affecting public safety, health, and welfare, on the ground that these are within the indefinable but unquestioned purview of what is known as the police power. It is indefinable, because none can foresee the ever-changing conditions which may call for its exercise; and it is unquestioned, because it is a necessary function of government to provide for the safety and welfare of the people. Private rights are often involved in its exercise, but a law is not on that account rendered invalid or unconstitutional."

The police power comprehends by far the greater portion of the powers which may be exercised by a state. As stated by Judge COOLEY in his work on Constitutional Limitations (7 ed.), page 829, it "embraces its whole system of internal regulation, by which the state seeks not only to preserve the public order and to prevent offenses against the state, but also to establish for the intercourse of citizens with citizens those rules of good manners and good neighborhood which are calculated to prevent a conflict of rights, and to insure to each the uninterrupted enjoyment of his own so far as is reasonably consistent with a like enjoyment of rights by others."

5. The limitation of the law to mills, factories, or manufacturing establishments is not in itself an unconstitutional discrimination. The work in factories is as different from that in mercantile houses as that in mines is from either: Freund, Police Power, § 313. It is conceded that the state by virtue of its police power may regulate the hours of labor of women and minors (*Commonwealth* v. *Riley,* 210 Mass. 387 (97 N. E. 367, 25 Ann. Cas. 388); *State* v. *Shorey,* 48 Or. 396 (86 Pac. 881, 24 L. R. A. (N. S.) 1121), also of

persons in underground mines, reduction plants, and smelters, and of men in the employ of common carriers.

6. All reasonable intendments will be made in favor of a law not obviously void upon its face: *Cline* v. *Greenwood,* 10 Or. 230; *Crowley* v. *State,* 11 Or. 512 (6 Pac. 70). It will therefore be presumed that the legislature has acted within constitutional limitations. Mr. Justice BREWER in *Atchison* v. *Matthews,* 174 U. S. 96, 104 (43 L. Ed. 909, 19 Sup. Ct. Rep. 609, 612), said:

"It is also a maxim of constitutional law that a legislature is presumed to have acted within constitutional limits, upon full knowledge of the facts, and with the purpose of promoting the interests of the people as a whole, and courts will not lightly hold that an act duly passed by the legislature was one in the enactment of which it has transcended its power."

The legislature is the exclusive judge of the propriety and necessity of legislative interference within the scope of legislative power. If a state of facts could exist which would justify legislation, it would be presumed that it did exist: *In re Ten-Hour Law, etc., supra; State* v. *Packham,* 3 R. I. 289; *Munn* v. *Illinois,* 94 U. S. 113 (24 L. Ed. 77). As a general rule statutes should be sustained unless their unconstitutionality is clear beyond a reasonable doubt. Such doubt should be solved in favor of a legislative enactment and the act sustained: Cooley, Const. Lim. (7 ed.), pp. 252, 253; *State* v. *Narragansett,* 16 R. I. 424 (16 Atl. 901, 3 L. R. A. 295); *State* v. *Schluer,* 59 Or. 18, 35 (115 Pac. 1057). See dissenting opinions of Mr. Justice HARLAN, Mr. Justice WHITE and Mr. Justice DAY concurring, and of Mr. Justice HARLAN in *Lochner* v. *New York,* 198 U. S. 45 (49 L. Ed. 937, 25 Sup. Ct. Rep. 539, 2 Ann. Cas. 1133, 1139).

7. In order to render a statute invalid by reason of discriminations which are clearly unreasonable, arbi-

trary, oppressive, or partial, the vice of the law must
be apparent upon its face.   One of the objects of re-
sorting to the governmental function known as the
police power is for the betterment of social and eco-
nomic conditions which affect the community at large,
with a view of accomplishing "the greatest good of
the greatest numbef." A certain minimum of physical
well-being is necessary in order that social life may
exist, the usefulness and intelligence of the citizens be
increased, and the progress of civilization accelerated:
Freund, Police Power, §§ 8, 10.  The conditions which
may call for the exercise of this power are continually
changing.   For this reason the police power is some-
times referred to as if it were elastic.  We are of the
opinion, however, that the changes refer to the applica-
tion of the function, and that the power remains im-
mutable, being called into requisition when the condi-
tions authorize and demand legislative action.   The
required minimum of well-being varies in different
periods, but rises with advancing civilization until it
includes a certain standard of comfort.  We quote Mr.
Justice HOLMES in *Noble State Bank v. Haskell,* 219
U. S. 104, 111 (55 L. Ed. 112, 31 Sup. Ct. Rep. 186, 188,
Ann. Cas. 1912A, 487, 32 L. R. A. (N. S.) 1062):

"It may be said in a general way that the police
power extends to all the great public needs. * * It
may be put forth in aid of what is sanctioned by usage,
or held by the prevailing morality or strong and pre-
ponderant opinion to be greatly and immediately
necessary to the public welfare."

In the latter case the constitutionality of a statute
of Oklahoma requiring the payment of contributions by
banks toward a depositors' guaranty fund for the pro-
tection of depositors was under consideration upon the
ground that the legislature of Oklahoma had by im-

plication declared free banking a public danger, and it was held that it was not palpable or beyond doubt that it was not true.

In *Powell* v. *Pennsylvania,* 127 U. S. 678 (32 L. Ed. 253, 8 Sup. Ct. Rep. 992, 1257), the constitutionality of a statute of Pennsylvania prohibiting the manufacture or sale of oleomargarine was questioned. No evidence was offered on the trial to show that the article was impure or unwholesome. On the contrary, there was an offer to prove that it was a wholesome, nutritious food, in all respects as healthful as butter produced from pure cream. The court held that whether the manufacture of oleomargarine of the kind described in the statute involved such danger to the public health as to require for the protection of the people the entire suppression of the business, rather than its regulation in such manner as to prevent its manufacture and sale to go on, were questions of fact and of public policy which belonged to the legislative department to determine, and that the court could not interfere without usurping the powers of the legislative department.

By the code of the State of Georgia, 1895, Sections 2615, 2619, the hours of labor in cotton or woolen manufacturing establishments were limited to 11 hours, except in case of engineers, etc., and help employed to make repairs, the aggregate of working hours per week was not to exceed 66, and contracts for a longer time were declared void: See 2 Labatt's Master and Servant (2 ed.), § 886.

Judge COOLEY says:

"Whether a statute is constitutional or not is always a question of power; that is, a question whether the legislature in the particular case, in respect to the subject matter of the act, the manner in which its object is to be accomplished, and the mode of enacting it,

has kept within the constitutional limits and observed the constitutional conditions. In any case in which this question is answered in the affirmative the courts are not at liberty to inquire into the proper exercise of the power. They must assume that legislative discretion has been properly exercised'': Cooley Const. Lim. (7 ed.), p. 257.

A note to *Commonwealth* v. *Riley,* 25 Ann. Cas., at page 393, reads thus:

''It is generally held that a statute limiting the length of a day's labor is a valid exercise of the police power''—citing, among other cases, *Ex parte Boyce,* 27 Nev. 299 (75 Pac. 1, 1 Ann. Cas. 66, 65 L. R. A. 47); *United States* v. *St. Louis S. W. R. Co.* (D. C.), 189 Fed. 954; *In re Martin,* 157 Cal. 51 (106 Pac. 235, 26 L. R. A. (N. S.) 242); *Ex parte Miller,* 162 Cal. 687 (124 Pac. 427); *Inland Steel Co.* v. *Yedinak,* 172 Ind. 423 (87 N. E. 229, 139 Am. St. Rep. 389); *St. Louis etc. R. Co.* v. *McWhirter,* 145 Ky. 427 (140 S. W. 672); *Withey* v. *Bloem,* 163 Mich. 419 (128 N. W. 913, 35 L. R. A. (N. S.) 628); *People* v. *Erie R. Co.,* 198 N. Y. 369 (91 N. E. 849, 139 Am. St. Rep. 828, 19 Ann. Cas. 811, 29 L. R. A. (N. S.) 240); *Byars* v. *State,* 2 Okl. Cr. 481 (102 Pac. 804, Ann. Cas. 1912A, 765); *State* v. *Somerville,* 67 Wash. 638 (122 Pac. 324).

In *City of Chicago* v. *Schmidinger,* 243 Ill. 167 (90 N. E. 369, 17 Ann. Cas. 614, 44 L. R. A. (N. S.) 632), it was held that the bread ordinance of the City of Chicago which fixed the size of loaves and regulated the sale of bread was a valid exercise of the police power. And in *City of Chicago* v. *Bowman Dairy Co.,* 234 Ill. 294 (84 N. E. 913, 123 Am. St. Rep. 100, 14 Ann. Cas. 700, 17 L. R. A. (N. S.) 684), it was held that the regulation by the city of the sale of milk and cream in bottles and glass jars was a proper exercise of the police power.

In Freund, Police Power, Section 310, it is stated:

"Legislation for the protection of labor which restrains individual liberty and property rights falls under the police power, but the object is not necessarily an economic one. The great mass of labor legislation is enacted in the interest of health and safety, and in factory and mining regulations we find, especially where women and young persons are concerned, provisions to promote decency and comfort. Laws of this character rest upon a clear and undisputed title of public power."

In *Otis* v. *Parker,* 187 U. S. 606, 608, 609 (47 L. Ed. 323, 23 Sup. Ct. Rep. 168, 170), Mr. Justice HOLMES uses this language:

"While the courts must exercise a judgment of their own, it by no means is true that every law is void which may seem to the judges who pass upon it excessive, unsuited to its ostensible end, or based upon conceptions of morality with which they disagree. Considerable latitude must be allowed for differences of view as well as for possible peculiar conditions which this court can know but imperfectly, if at all. Otherwise a Constitution, instead of embodying only relatively fundamental rules of right, as generally understood by all English-speaking communities, would become the partisan of a particular set of ethical or economical opinions, which by no means are held *semper ubique et ab omnibus.*"

The restriction as to the hours of labor is in the same category as safe and sanitary regulations. The need of the restriction arises out of the employment and because of it. There is a real substantial relation between the need and the particular employment. It is therefore a proper police regulation.

The act in question is a human life, health, and welfare statute. While a penalty for a violation of its provisions is provided, it is remedial in its nature, and

should be given an interpretation in the interest of the public good, so as to carry out the legislative intent: *State* v. *City of Ottawa,* 84 Kan. 100 (113 Pac. 391, 394). Legislative regulation of the hours of labor of men and that of women differ only in the degree of necessity therefor. In the judgment of the legislature the interest of the public requires that no person be employed in any manufacturing establishment more than 10 hours in any one day, except watchmen, employees, engaged in making repairs, or in case of emergency. Obviously, in addition to the reasons declared in the law, it was in the legislative mind that the regular employment of persons for longer hours in factories where different kinds of machinery and facilities are operated under the present day high-pressure power would tend to increase the danger of accidents, and to a greater extent jeopardize life and limb, thereby increasing the demand for compensation for such injuries, a portion of which, under certain circumstances, would ultimately be borne by the state: See Industrial Act, Chapter 112, Laws 1913, pp. 188, 198, § 20. It is worthy of note that in the latter act, filed in the office of the Secretary of State on the same date as the one in question, mills and factories in which machinery is used are classed as places of hazardous occupations: See § 13 of the act.

Another consideration not without weight is that suggested in the preamble to the act, which discloses, among other things, that the working of any person more than 10 hours a day in any mill, factory, or manufacturing establishment "tends to prevent him from acquiring that degree of intelligence that is necessary to make him a useful and desirable citizen of the state." While labor is heaven's first law and a reasonable amount of physical exertion is salutary, it is

an undeniable fact that prolonged and excessive physical labor is performed at the expense of the mental powers, and it requires no argument to show that a man who day in and day out labors more than 10 hours must not only deteriorate physically, but mentally. The safety of a country depends upon the intelligence of its citizens, and if our institutions are to be preserved and the state must see to it that the citizen shall have some leisure which he may employ in fitting himself for those duties which are the highest attributes of good citizenship. As a voter, a juror, and, in this state, as a legislator, the best results can only be attained by so limiting the hours of toil that they may not be unduly prolonged to the exent of causing that mental deterioration that is sure to accompany undue and long-continued physical exertion. In view of the well-known fact that the custom in our industries does not sanction a longer service than 10 hours per day, it cannot be held, as a matter of law, the the legislative requirement is unreasonable or arbitrary as to hours of labor. Statistics show that the average daily working time among workingmen in different countries is, in Australia, 8 hours; in Great Britain, 9; in the United States, 9¾; in Denmark, 9¾; in Norway, 10; Sweden, France, and Switzerland, 10½; Germany, 10¼; Belgium, Italy, and Austria, 11; and in Russia, 12 hours: *Lochner* v. *New York,* 198 U. S. 45 (49 L. Ed. 937, 25 Sup. Ct .Rep. 539, 3 Ann. Cas. 1141).

In order to warrant declaring the act violative of the fundamental law, it should be shown that in the light of the world's experience and common knowledge the act under consideration is palpably and beyond reasonable doubt one that will not tend to protect or conserve the public peace, health, or welfare in its enforcement. It is by no means clear beyond a reasonable

doubt that the law will not promote the peace, health, and general welfare of citizens of the state, or that longer hours of labor in factories would not be injurious to the health as declared by the act, or that the act is repugnant to the Constitution. The presumption, therefore, is in favor of the wisdom and the correctness of the legislative finding and determination that the law is a necessity for the protection of the health, well-being, and general welfare of the public; that the regulation prescribed by the enactment will tend to correct the evil at which it is aimed. The courts cannot set aside the legislative decree without intrenching upon the prerogatives of a co-ordinate branch of the state government, and usurping the powers of the legislature.

The law does not prevent the laborer from working as many hours per day as he sees fit, and does not violate his right to labor as long as he may desire, but only prohibits his being employed in any mill, factory, or manufacturing establishment more than a certain number of hours in any one day: *Commonwealth* v. *Hamilton Mfg. Co.,* 120 Mass. 383, and cases there cited. It is urged by the learned counsel for defendant that if it is possible for the legislature to make the declaration that to work in a factory more than 10 hours in one day is injurious to the health, then that body can make four hours a day's work, and require two hours of the work to be performed before 8 o'clock A. M. It is sufficient to say that the question of four hours constituting a day's labor, or when any part of it shall be done, is not now before this court. When our journey has so far progressed as to arrive at that bridge, if it ever does, it will then be an opportune time to cross it. We have, however, already adverted to the rule that the governmental

power in question cannot be made an excuse for arbitrary, unreasonable, or oppressive legislation.

The act applies to all the people of the state who employ labor in mills, factories, or manufacturing establishments. In the very nature of things the occupations affected by the law furnish a reasonable basis for the statutory regulation. In the light of the former decisions of this court the classification is not unreasonable: *In re Oberg,* 21 Or. 406 (28 Pac. 130, 14 L. R. A. 577); *State ex rel.* v. *Frazier,* 36 Or. 178 (59 Pac. 5); *State* v. *Thompson,* 47 Or. 492 (84 Pac. 476, 8 Ann. Cas. 646, 4 L. R. A. (N. S.) 480); *State* v. *Muller,* 48 Or. 252 (85 Pac. 855, 120 Am. St. Rep. 805, 11 Ann. Cas. 88, 208 U. S. 412, 52 L. Ed. 551, 13 Ann. Cas. 957, 28 Sup. Ct. Rep. 324). See, also, *Commonwealth* v. *Riley,* 210 Mass. 394 (97 N. E. 370, 25 Ann. Cas. 388).

8. It is contended by counsel for defendant that the provision for employees to work overtime not to exceed three hours in any one day, conditioned that payment be made for said overtime at the rate of time and one half the regular wage, renders the whole act void. It is clear that the intent of the law is to make 10 hours a regular day's labor in the occupations to which reference is made. Apparently the provisions permitting labor for the overtime on express conditions were made in order to faciliate the enforcement of the law, and in the nature of a mild penalty for employing one not more than three hours overtime. It might be regarded as more difficult to detect violations of the law by an employment for a shorter time than for a longer time. This penalty also goes to the employee in case the employer avails himself of the overtime clause. Reasonable modes of enforcing a statute should be upheld: *Fisher* v. *McGirr,* 1 Gray

(Mass.), 1 (61 Am. Dec. 381); *Commonwealth* v. *Riley,* 210 Mass., at page 394 (97 N. E., at page 370, 25 Ann. Cas. 388, at page 392), where Mr. Chief Justice Rugg says:

"When the constitutionality of the statute limiting the hours of labor of women is settled, the means by which the aim of the statute may be forwarded within reasonable bounds are matters for legislative determination."

Legislative provisions are frequently made that a portion of a fine for the infraction of a statute shall be paid to the informer. The aim of the statute is to fix the maximum hours of service in certain industries. The act makes no attempt to fix the standard of wages. No maximum or minimum wage is named. That is left wholly to the contracting parties.

The statute under which the complaint is made in this case is not violative of the Constitution of the United States or of this state. As a consequence, the judgment of the lower court is affirmed.

Affirmed.    Rehearing Denied.

Mr. Justice Eakin took no part in the consideration of this case.