COMMONWEALTH *vs.* JOHN H. KARVONEN.

Worcester.     September 28, 1914. — October 22, 1914.

Present: RUGG, C. J., BRALEY, SHELDON, DE COURCY, & CROSBY, JJ.

*Flag.   Constitutional Law,* Police power.

Under St. 1913, c. 678, § 2, which provides that "No red or black flag, and no banner, ensign or sign having upon it any inscription opposed to organized government, or which is sacrilegious, or which may be derogatory to public morals, shall be carried in parade within this Commonwealth," the carrying in a parade of a flag entirely red on one side and on the other side of the same color, except for a harmless inscription of another color consisting of the name of a society, may be found to have been a violation of the statute.

St. 1913, c. 678, § 2, which prohibits the carrying of a red flag in a parade, is constitutional as a proper exercise of the police power.

COMPLAINT, received and sworn to in the Police Court of Fitchburg on November 4, 1913, under St. 1913, c. 678, § 2, charging that the defendant on November 3, 1913, "did carry a red flag in a parade in said Fitchburg."

On appeal to the Superior Court the case was tried before *Dubuque,* J., on an agreed statement of facts, including the facts which are stated in the opinion. The defendant asked the judge to rule that he should be found not guilty; that he had committed no offense known to the law and should be discharged; that he had not violated St. 1913, c. 678, § 2; and that that statute was

unconstitutional and void. The judge refused to make any of these rulings, and instructed the jury that the statute, which was read to them and explained, was constitutional and that the evidence for the Commonwealth, as agreed to by the defendant, would, if believed, be sufficient to justify a verdict of guilty, if they found that the flag in question was a "red flag" within the meaning of the act.

The jury rendered a verdict of guilty; and the defendant alleged exceptions.

*J. McCarty,* for the defendant.

*J. A. Stiles,* District Attorney, for the Commonwealth.

RUGG, C. J. This is a complaint for the violation of St. 1913, c. 678, § 2, which is in these words: "No red or black flag, and no banner, ensign or sign having upon it any inscription opposed to organized government, or which is sacrilegious, or which may be derogatory to public morals, shall be carried in parade within this Commonwealth." The defendant carried in a parade at Fitchburg a flag red in color throughout, except that upon one side was marked in gilt letters, "S. S. O. Saima, Fitchburg, Mass.," meaning in English, "Finnish Socialist Branch Fitchburg, Mass." The flag is the regular society banner of that "Branch" and has been used as such by it for many years. The parade was preliminary to a socialist rally. Whether the flag in question was a red flag within the meaning of the act was left to the jury to determine as a fact.

As matter of construction the statute prohibits the carrying of red and black flags absolutely, and does not make this prohibition dependent upon the nature of the inscription. Color alone brings a flag within the terms of the act. Two things are within the scope of the act. The carrying in parade of flags red or black in color is forbidden, and also the like carrying of other objects having the inscriptions or characteristics described. The doing of either thing is made illegal.

The defendant contends that the statute refers only to those flags which are clear and uninterrupted red or black throughout, and that a banner with a red background, bearing a harmless inscription, is not within its inhibition. This contention cannot be sustained. If the flag is of the forbidden color in its essential and dominating characteristics, then the mere circumstance that

it bears also an inscription or device of another color is not enough to prevent its being a red flag. The flag carried by the defendant plainly might have been found to have been a red flag. It was entirely of that color upon one side, and the crimson surface of the opposite side was broken only by the letters above quoted.

That this flag happens to be the usual banner of a society affiliated with a political party is no defense. The words of the statute are sweeping and make no exception in favor of political parties, social organizations, secret societies or beneficiary or other associations.

The statute as thus construed does not violate any rights protected by either the State or Federal Constitution. Under both these instruments the liberty of the citizen is guaranteed. But the liberty thus secured does not mean the unrestrained license of an unbridled will. Constitutional freedom means liberty regulated by law. Personal rights may be curbed in a rational way for the common good. Liberty is immunity from arbitrary commands and capricious prohibitions, but not the absence of reasonable rules for the protection of the community. *Commonwealth* v. *Libbey*, 216 Mass. 356, and cases cited. *Commonwealth* v. *Riley*, 210 Mass. 387, affirmed in *Riley* v. *Massachusetts*, 232 U. S. 671. *Chicago, Burlington & Quincy Railroad* v. *McGuire*, 219 U. S. 549, 567. The statute here in question cannot be said to interfere unreasonably with the liberty of the citizens, nor can it be adjudged to have no rational connection with the preservation of public safety. The maintenance of order is plainly a lawful exercise of the police power. Statutes designed to promote that end cannot be stricken down as unconstitutional unless they manifestly have no tendency to produce that result. It is said in Webster's Dictionary that "historically, a red flag has been a revolutionary and terroristic emblem." In the Century Dictionary is found this: "Red flag. (*a*) A flag of a red color with or without devices, associated with blood or danger." Other lexicographers give similar definitions. In the light of this well recognized significance of the red flag, it may be assumed that the Legislature regarded it as the symbol of ideas hostile to established order, and decided that its carrying in parades would be likely to provoke turbulence or to menace the safety of travellers or citizens in general, or otherwise to interfere with the common

welfare. Its determination in this regard cannot be pronounced by the courts contrary to the fundamental law, as being arbitrary or unreasonable, or as having clearly no relation to the ends for which the police power may be exercised.

*Exceptions overruled.*